# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JULIO REYNOSO, LUIS GONZALEZ, and MANUEL GONZALEZ, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 13 cv 05004 |
| MOTEL LLC, an Illinois Limited Liability Company, d/b/a MOTEL BAR, and HERBERT GREENWALD, an individual, | ) ) ) ) | Judge Milton I. Shadur |
| | ) | Magistrate Judge Jeffrey Cole |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

The Defendants, Motel LLC ("Motel"), an Illinois Limited Liability Company d/b/a Motel Bar, and Herbert Greenwald ("Greenwald"), an individual, by and through their attorneys, the Law Offices of Robert J. Shelist, P.C., hereby submit their response in opposition to the motion for summary judgment filed by the Plaintiffs, Julio Reynoso, Luis Gonzalez and Manuel Gonzalez.

## INTRODUCTION

The Plaintiffs filed this case as a class action against the Defendants for unpaid overtime wages, on their own behalf as well as all other persons similarly situated, under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and the Illinois Minimum Wage Law, 820 ILCS § 105/1, *et seq.* ("IMWL").[1] In addition to compensatory damages, Plaintiffs are seeking liquidated damages, statutory interest and attorney's fees (Docket No. 1).

---

[1] In their motion for summary judgment, Plaintiffs do not assert any claims on the behalf of a purported class nor for any other potential claimants and seemingly have abandoned the class action.

Plaintiffs now move for summary judgment. For the reasons contained herein, the motion should be denied. At a minimum, the presence of contested fact issues should preclude summary judgment. At most, summary judgment should be entered for the Plaintiffs and against Motel for unpaid overtime wages due, as calculated by Defendants (see *infra*). The requests for liquidated damages, interest and attorney's fees, as well as any damages against Herbert Greenwald, individually, should be denied.

## **LEGAL STANDARD FOR MOTION FOR SUMMARY JUDGMENT**

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986). The moving party has the burden of providing proper evidence to show the absence of a genuine issue of material fact. *Id.*, 477 U.S. at 323-24, 106 S. Ct. at 2553, 265 L.Ed.2d at 274. The purpose of summary judgment is to assess the proof in order to determine whether there is a need for a trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986).

All reasonable inferences to be drawn from the underlying facts are viewed in favor of the party opposing a summary judgment motion. *Id.* In determining whether a genuine issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L.Ed.2d 142, 154 (1970).

**ARGUMENT**

I. **PLAINTIFFS FAIL TO PROPERLY PLEAD AND PROVE A STATUTORY VIOLATION AGAINST HERBERT GREENWALD SUBJECTING HIM TO INDIVIDUAL LIABILITY. ACCORDINGLY, THE MOTION FOR SUMMARY JUDGMENT AGAINST HIM, INDIVIDUALLY, SHOULD BE DENIED.**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662 129 S. Ct. 1937, 1949 (2009). Although this rule "does not require 'detailed factual allegations,'" *Id*. (*quoting Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007), "[a] pleading that 'offers labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (*quoting Twombly,* 550 U.S. at 555). Nor does a complaint suffice if it is "consisting of nothing more than 'naked assertion[s]' devoid of 'further factual enhancement.'" *Walton v. Walker,* 364 Fed.Appx. 256, 258 (7th Cir. 2010); *quoting Iqbal*, 129 S. Ct. at 1949.

Here, in Paragraphs 14 and 22 and throughout their Complaint, Plaintiffs allege, in conclusory fashion and without any factual allegations in support, that both Motel and Greenwald are their "employers" under the FLSA and the IMWL (Docket No. 1). Plaintiffs, however, fail to allege any facts that even remotely could result in a finding that Greenwald is their employer, as a matter of law. These allegations are denied by the Defendants in their Answer and Affirmative Defenses (Docket No. 13) and in their Amended Answer (Docket No. 15).

The bottom line is that the Plaintiffs' Complaint is deficiently pled and is devoid of any allegations of fact that would permit a finding that Greenwald should be deemed to be the Plaintiffs' employer, as a matter of law. Due to the deficient pleading, Plaintiffs are not entitled to summary judgment against Greenwald, individually. Even assuming *arguendo* that no pleading malady exists, a point certainly not conceded, the facts support a finding that Greenwald was ***not*** an employer of

the Defendants under the FLSA and IMWL. At a minimum, questions of material fact exist as to whether or not Greenwald should be deemed to be the Plaintiffs' employer.

Courts employ an "economic reality" test to evaluate employer status and consider factors such as corporate and ownership capacity, the authority to hire and fire employees, supervision and control over the employees' work schedules, the conditions of employment, the rate and method of payment, and the maintenance of employment records. *Nehmelman v. Penn Nat. Gaming, Inc.*, 790 F. Supp. 2d 787, 795 (N.D. Ill. 2011). Courts employing this test have found corporate officers with significant ownership, operational control over the business, day-to-day control, involvement in supervision and payment responsibility to be personally liable for violations of the FLSA. [2]

The lynchpin among all of the cited cases is that individual liability was found to exist against those who were **corporate officers and/or owners** of the subject companies. Here, on the contrary, it is indisputable that Greenwald is not an owner, shareholder, member, officer or director of Motel (See the Declaration of Greenwald, ¶ 4, Exhibit A). For that critical reason and as a matter of law, he can not be held liable for Motel's alleged violations of the statutes.

Nor do the facts support a finding of individual liability against Greenwald under the economic reality test. While, generally speaking, Greenwald oversaw the day-to-day operations of Motel (a restaurant and bar located in Chicago) and ultimately had the authority to hire and fire

---

[2] *See, e.g., Solis v. Intern. Detective & Protective Service*, 819 F. Supp. 2d 740, 749 (N.D. Ill. 2011)(president and sole owner of company, who was responsible for payroll, accounting and invoicing, was an employer and was personally liable under the FLSA); *Morgan v. SpeakEasy, LLC*, 625 F. Supp. 2d 632, 646 (N.D. Ill. 2007)(owner and shareholder of corporation, who had "ultimate authority" in supervising, hiring, firing, and paying employees, was jointly and severally liable); *Harper v. Wilson*, 302 F. Supp. 2d 873, 883 (N.D. Ill. 2004)(corporate officers with obligation to pay plaintiff his earned wages were personally liable); *McLauglin v. Lunde Truck Sales, Inc.*, 714 F. Supp. 920, (N.D. Ill. 1989)(president acting in the direct and indirect interest of corporate defendants was an employer under the FLSA).

4

employees and set schedules, the reality is that he delegated those responsibilities to others. Motel's non-kitchen staff, reported directly to Matt Sokol ("Sokol"), the General Manager of the business (Ex. A, ¶ 6; Declaration of Sokol, ¶ 4, Exhibit B; Sokol deposition excerpt, Exhibit D, p. 11).

The kitchen staff, at all pertinent times, reported to the kitchen manager, Julio Reynoso ("Reynoso")(who is one of the Plaintiffs). All three Plaintiffs were employed in the kitchen of Motel. Reynoso, as kitchen manager, had the authority to hire and fire kitchen employees, and in fact, exclusively did all of the hiring and firing. And, Reynoso set the rate of pay for the kitchen employees and set their schedules. There was a language barrier between Greenwald, Sokol and the kitchen staff, who spoke mostly Spanish, leading to the complete delegation of supervisory control over the kitchen staff to Reynoso, who spoke both English and Spanish (Ex. A, ¶¶ 7-9: Ex. B, ¶¶ 5-7, Greenwald deposition excerpt, Exhibit C, pp. 33-35, 73, 75).

Thus, in conclusion, the facts do not support a finding of individual liability against Greenwald under the economic reality test. He is not an owner nor an officer of Motel. He delegated supervisory control over the employees to Motel's managers. The kitchen manager, Reynoso, determined the rates of pay of the kitchen staff, set their schedules and did all of the hiring and firing. For those reasons, summary judgment should be denied against Greenwald individually. At a minimum, questions of material fact exist as to Greenwald's control over the kitchen employees, to be determined by the trier of fact, which should preclude summary judgment.

**II.    LIQUIDATED DAMAGES SHOULD NOT BE AWARDED AGAINST EITHER DEFENDANT AND THEREFORE SHOULD BE DENIED.**

The FLSA provides for liquidated damages in the form of doubling the award for unpaid overtime compensation. 29 U.S.C. § 216(b). As originally drafted, the FLSA made doubling mandatory. *Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572, 581, 62 S. Ct. 1216, 1221,

86 L.Ed.2d 1682 (1942). However, the 1947 amendment to the Act altered the doubling provision to make it discretionary. *Walton v. United Consumers Club*, 786 F.2d 303, 310 (7th Cir. 1986).

Under Section 11 of the Portal-to-Portal Act, codified at 29 U.S.C. § 260, a court has "considerable discretion" to decline to double the award where an employer can show that the act or omission giving rise to the action was in good faith and that he had reasonable grounds for believing that there was no violation of the FLSA. *Walton.*, 786 F.2d at 308-12. The employer bears the burden of showing that it acted reasonably and with good faith. *Bankston v. State of Ill.*, 60 F.3d 1249, 1254 (7th Cir. 1995). Whether an employer's conduct is in good faith and reasonable is a mixed question of law and fact. *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 35 (1st Cir. 2007).

Here, liquidated damages should not be awarded against either Motel or Greenwald for the purported statutory violations. The failures to pay overtime wages to the Plaintiffs were inadvertent, not willful and not in bad faith, and were caused solely by the rogue and *ultra vires* actions of the company's bookkeeper, Robert Van Bruggen ("Van Bruggen"). Van Bruggen was hired on or about September 2008 as Motel's bookkeeper and to run and operate the financial side of Motel's business. As part of his job duties, Van Bruggen was responsible to maintain the company's employment records, do quarterly tax returns, report to the accountant, do payroll, write payroll and other checks, distribute payroll checks to the employees, operate the Quick Book accounting software and prepare and issue W-2s to the employees. He was considered to be a manager of the business (Ex. A, ¶ 10: Ex. B, ¶ 11, Greenwald depo., Ex.C, pp. 13-14, 26, 35-36, 44, 123, 135).

Van Bruggen was trusted and was responsible for handling the wage payments for Motel's employees, which included payments for overtime (Ex. A, ¶ 11: Ex. B, ¶ 12, Greenwald depo., Ex. C, pp. 15, 44). Importantly, Greenwald did not have privileges to input numbers into the

6

employment data system himself, did not know how to do so and prior to the filing of this lawsuit, had no knowledge that the employees were not paid overtime (Ex. A, ¶ 12; Greenwald depo., Ex. C, p. 158).

Sokol, Motel's General Manager, testified that he submitted the number of hours worked for the employees to Van Bruggen, that Van Bruggen calculated the amount due to employees based on the number of hours Sokol provided, that Van Bruggen was responsible to write checks and pay the employees their wages including overtime, and that he was to maintain business and employment records. Sokol further testified that Van Bruggen was the one that developed the dual pay system requesting that the hours worked by certain employees be separated into two columns, resulting in those employees being paid partially in cash and partially via check (Ex. B, ¶¶ 12-14, Sokol depo., Ex. D, pp. 16, 19, 21, 23, 55, 59-61, 101). Sokol and Greenwald deny having any role in or knowledge of the dual pay system employed by Van Bruggen (Ex. A, ¶ 13; Ex. B, ¶ 15).

Van Bruggen, himself, testified at his discovery deposition that he was initially hired because of a gap in the books of Motel and that he was responsible to resolve that issue. He further testified that his duties were to keep the books in order, generate reports, do the quarterly payroll and sales tax returns, communicate and provide figures to the company's accountant, manage the accounts payable and payroll, operate the Quick Book accounting software, maintain financial records and prepare and distribute payroll checks to Motel's employees. He testified that he was in charge of Motel's finances. Importantly, he testified that he was aware of the overtime payment laws, that overtime wages were not paid to employees, that he was never told by Greenwald or anyone at Motel not to pay overtime, that Greenwald was not part of the payroll process and that Greenwald relied upon him to handle the payroll. Van Bruggen further testified that he could not think of a

7

reason why he never asked or told anyone about the need to pay for employees' overtime, but that he should have done so (Van Bruggen deposition excerpt, Exhibit E, pp. 13-16, 52, 62, 118-121, 123, 131, 133-34, 137).

Van Bruggen also testified that it was his decision and actions to disguise payments of cash wages to certain employees in the categories of "advertising" and "promotion" on Motel's tax returns. No one at Motel, including Greenwald, requested or authorized that action (Van Bruggen depo., Ex. E, pp. 91, 94, 121). Later, Van Bruggen sent a package to the Illinois Department of Revenue claiming that there were financial irregularities occurring at Motel (Ex. E, pp. 154-155).[3]

Moreover and importantly, Van Bruggen admitted that he stole two checks from Motel, wrote two unauthorized checks to himself, stealing $3,000.00 in the process (Van Bruggen depo., Ex. E, pp. 145-147, 149). Van Bruggen was arrested by the Chicago Police Department and was charged with the crime of forgery in issuing and delivering documents, in violation of 720 ILCS 5.0/17-3-A-2, a class 3 Felony, Type F, in case number 14-1108297, related to the thefts. (Attached hereto as Exhibit E are copies of the forged checks as well as the felony complaint.)[4]

Not only did Van Bruggen admittedly steal from Motel and fail to pay overtime to its employees, but in addition, he took other actions to hurt the business and attempted to line his own pockets in the process. During cross examination at his discovery deposition, Van Bruggen initially denied both that he attempted to extort money from Greenwald and made overtures attempting to purchase Motel. After being confronted with a litany of e-mails that he wrote proving that he indeed

---

[3] This unauthorized practice has caused issues for Motel and Greenwald with the Illinois Department of Revenue, as attested to by Greenwald in his Declaration (Ex. A, ¶ 14-15).

[4] Greenwald attests that additional monies were stolen and misappropriated from Motel but that the accountants for the business are unsure exactly what happened to the money and whether Van Bruggen was involved (Ex. A, ¶ 17).

had repeatedly demanded money and attempted to purchase Motel, he acquiesced and admitted those facts (copies of the e-mails are attached hereto as Exhibit H). Van Bruggen further admitted both that the purchase price for Motel would be lower if the business was in financial trouble and that he stood to personally benefit if he did a poor job in his employment, enabling him to attempt to purchase the Motel at a discount (Van Bruggen depo., Ex. E, pp. 150-152, 160-166, 168).

Those facts clearly demonstrate that Van Bruggen had ulterior motives to extort money from Greenwald and line his own pockets, by purchasing Motel at a below market rate, resulting from doing a poor job in his employment. His poor job performance is evidenced by paying employees cash in a dual pay system without authorization, failing to pay overtime, hiding cash payments to employees on the company's tax returns and notifying the IDOR of alleged wrongdoing at Motel, that he caused.

The uncontradicted facts of Van Bruggen's wrongful and criminal conduct, coupled with the company's good faith reliance upon him to handle the financial side of the business, certainly militate against a finding for liquidated damages under the statutes. The Defendants have adequately shown a reliance upon Van Bruggen, Motel's bookkeeper and financial manager, to comply with the overtime requirements and make requisite payments to the employees. For all of these reasons, there was no intent to avoid paying overtime. Accordingly, liquidated damages should be denied.

**III.    AS THE KITCHEN MANAGER, REYNOSO IS EXEMPT FROM AND CAN NOT RECOVER OVERTIME WAGES UNDER THE FLSA AND IMWL.**

The FLSA and IMWL generally require the payment of overtime when an employee works more than forty hours per week. 29 U.S.C. § 207(a)(1), 820 ILCS 105/1. The statutes parallel each other and the same analysis generally applies to both statutes. *Villareal v. El Chile, Inc.*, 776 F. Supp. 3d 778, 784 (N.D. Ill. 2011). There are exceptions, however, to the general rule. Both

9

statutes exclude employees working in "a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1); 820 ILCS 105/4a(2)(E). Whether an employee is exempt under the FLSA is primarily a question of fact but the ultimate decision is a question of law.

An employee is employed in an executive capacity for purposes of the exemption if: (1) he is "[c]ompensated on a salary basis at a rate of not less than $455 per week;" (2) his "primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department of subdivision thereof;" (3) he "customarily and regularly directs the work of two or more other employees;" and (4) he "has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a).

The Department of Labor regulations also state that the exempt employees' duties must "require the exercise of discretion and independent judgment customarily and regularly, meaning a frequency greater than occasional but less than constant." 29 C.F.R. § 541.207(g).

The regulations address a situation like the one presented here where an employee performs a combination of exempt and non-exempt duties. Whether an employee is exempt is determined on a case-by-case basis based on the factors contained in § 541.700. Generally, exempt executives make the decision regarding when to perform nonexempt duties and remain responsible for the success or failure of business operations under their management while performing the nonexempt work. The regulations highlight examples where employees are performing nonexempt work, such as serving customers, cooking food, etc., and do not lose executive status. 29 C.F.R. § 541.106**.**

Finally, the regulations define the term "management" as including interviewing, selecting and training of employees, setting and adjusting rates of pay and hours of work, directing the work

of employees, maintaining production or sales records for use in supervision or control, appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status, handling employee complaints and grievances, disciplining employees, planning the work, etc. 29 C.F.R. § 541.102.

The amount of time expended by an exempt employee in a supervisory or management capacity is not determinative of whether that employee is exempt or not. Time alone is not the sole test and there is no requirement, for example, that exempt employees spend more than fifty percent of their time performing exempt work. 29 C.F.R. § 541.700(b). Rather, the importance of the tasks is the primary concern. Courts evaluate the relative importance of an employee's managerial tasks to the success of a business operation versus the amount of time doing exempt work. *Ward v. Family Dollar Stores, Inc.*, 830 F. Supp. 2d 102, 109 (W.D. N.C. 2011). [5]

Here, it is beyond reasonable dispute that Reynoso acted in an executive capacity and qualifies as an exempt executive. Reynoso had the authority to hire and fire kitchen employees, and in fact, did all of the hiring and firing. He is the one that set the rate of pay for the kitchen employees and set their schedules. He supervised and managed their work. In running the kitchen and doing all of the hiring and firing, Reynoso was empowered to exercise discretion and independent judgment in the performance of his duties (Ex. A, ¶¶ 7-8, 20: Ex B, ¶¶ 5-6, Greenwald depo., Ex. C, pp. 33-35, 73, 75).

---

[5] *See, e.g., Coberly v. Christus Health*, 829 F. Supp. 2d 521 (N.D. Tex. 2011)(plaintiff was deemed an exempt executive because he was responsible for managing the kitchen, planning meals, procuring food supplies and equipment, the production of meals, directing and supervising staff and work flow of kitchen personnel, interviewing and recommending the hiring and firing of kitchen staff, had discretion and exercised independent judgment, etc.); *Grace v. Family Dollar Stores, Inc*. 637 F.3d 508 (4th Cir. 2011)(plaintiff was performing management duties whenever she was in the store even though she devoted most of her time (99%) to doing the mundane physical activities necessary for its successful operation).

11

Moreover, the facts support the conclusion that Reynoso's management duties were much more important to the business of Motel than his duties of being a cook. Afterall, he ran the kitchen, set schedules and supervised and managed all of the kitchen personnel. Even while performing nonexempt cooking work, he was simultaneously and at all times managing the other kitchen employees and making sure that the kitchen was being operated properly and smoothly.

Further, Reynoso supervised many full-time employees at Motel, including but not limited to the other two Plaintiffs, Luis Gonzalez and Manuel Gonzalez (combined , who worked more than eighty hours a week, meeting the requirement that an exempt executive supervise a total of eighty employee hours a week, 69 Fed.Reg. 22135). [6] And, from Plaintiffs' own Exhibit I-3, Reynoso earned more than $455 per week in nearly every week for the applicable time period.

Based on the totality of the uncontradicted record, this Court must find that Reynoso is an exempt employee under both the FLSA and IMWL. At the absolute minimum, questions of material fact exist as to whether he is an exempt executive precluded from recovery under the statutes. [7]

## IV. THE PLAINTIFFS ARE ONLY ENTITLED TO TWO YEARS OF DAMAGES UNDER THE FLSA, IF ANYTHING, SINCE THEY ARE UNABLE TO ESTABLISH A WILLFUL VIOLATION OF THE STATUTE.

The FLSA's statute of limitations is two years but can be extended to three years if a Plaintiff can prove that the violations were "willful." 29 U.S.C. § 255(a). A violation is considered willful if the employer knew or recklessly disregarded whether its conduct was prohibited by the FLSA.

---

[6] See ¶ 5 of the Declaration of Manuel Gonzalez and ¶ 5 of the Declaration of Luis Gonzalez, attached as Exhibits A and B to Plaintiff's motion for summary judgment.

[7] *See e.g., Szarynch v. Theis-Gorski Funeral Home, Inc.*, 957 F. Supp. 132 (N.D. Ill. 1997)(because the extent to which the employee exercised discretion and independent judgment was contested by the parties, summary judgment was precluded requiring a trial on the issue).

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 130-33, 108 S. Ct. 1677, 100 L.Ed.2d 115 (1988). The Plaintiffs bear the burden of proving a willful violation of the statute. *Id.*, 486 U.S. at 133.

The fact that Congress did not simply extend the limitations period to three years, but instead adopted a two-tiered statute of limitations, makes it obvious that it intended to draw a significant distinction between ordinary violations and willful violations. *Id.*, 486 U.S. at 132, 108 S. Ct. at 1681. If an employer acts "reasonably" or even if the employer acted "unreasonably but not recklessly," in determining its legal obligation, then those actions are not considered "willful." *Id.*, 486 U.S. at 135, n. 13. Absent a showing of evidence establishing an intentional violation of the statute or recklessness on the part of Motel and/or Greenwald, no willfulness can be found to exist justifying the extension of the limitation to three years. [8]

Defendants opine that the allegations of willfulness pled in the Complaint are woefully inadequate. The Supreme Court held in *Iqbal* that conclusory allegations of willfulness are insufficient. *Iqbal*, 129 S. Ct. at 1954. Here, Plaintiffs allege, in conclusory fashion, that the Defendants' failure to pay overtime wages "was willful and not in good faith." (Complaint ¶ 18, Docket No. 1.) They go on to allege that willfulness is established by the fact that "Defendants instituted a dual pay system to avoid the payment and reporting of hours worked by its employees in excess of forty (40) per week." (*Id.*) Defendants' Answer and Amended Answer denied the allegations and affirmatively stated that any failures to pay overtime wages was "inadvertent, not wilful nor in bad faith." (Answer and Amended Answer ¶ 18, Dockets No. 13, 15.)

---

[8] *See, e.g., Oakes v. Com. of Pa.*, 871 F. Supp. 797, 801 (M.D. Pa. 1995)(entering summary judgment for the employer finding that its conduct was not "willful" under the FLSA where the Plaintiffs failed to set forth any evidence establishing that the Defendants intentionally violated the FLSA or that they were reckless in their consideration of its effect).

Plaintiffs attempt to prove wilfulness in their brief by pointing to the alleged dual pay system at Motel coupled with a purported refusal to enable the overtime settings on their payroll software. (Plaintiffs' brief, p. 11.) However, Plaintiffs have failed to cite to any document or testimony to establish that either Motel or Greenwald instituted and/or were responsible for either alleged act.

Moreover, the facts demonstrate that neither Motel nor Greenwald instituted the dual pay system or paid cash to the Plaintiffs. With respect to the dual pay system, Defendants categorically deny that either Motel or Greenwald were responsible for its implementation (Sokol depo., Ex. D, p. 101; Ex. A, ¶ 13; Ex. B, ¶ 15) and further deny that they refused to enable the overtime settings on the payroll software (Ex. A, ¶ 18; Ex. B, ¶ 16). The evidence contrarily points solely to Van Bruggen's wrongful conduct (*supra*). Accordingly, there is no basis for a willfulness determination. The Plaintiffs are entitled to damages, if at all, for two years of purported violations of the FLSA. At a minimum, questions of material fact exist for determination by the trier of fact at trial.

## V. QUESTIONS OF MATERIAL FACT EXIST AS TO THE AMOUNT DUE THE PLAINTIFFS FOR OVERTIME WAGES, PRECLUDING THE ENTRY OF SUMMARY JUDGMENT.

In their motion, Plaintiffs claim that compensatory damages are due for unpaid overtime, as follows: (1) for Julio Reynoso in the amount of $16,736.72; (2) for Manuel Gonzalez in the amount of $5,260.00; and (3) for Luis Gonzalez in the amount of $23,226.78 (Docket No. 23). Defendants admit that overtime was not paid to the Plaintiffs due to the wrongful actions of Motel's former employee, Van Bruggen. However, Defendants contest the amount claimed due.

Defendants have conducted an analysis of the hours worked by the three Plaintiffs and have calculated the amount of overtime that is due. For Reynoso, Defendants state that he is due

$1,325.35 for overtime, if at all. [9] Defendants state that Manuel Gonzalez is due $4,975.00 and that Luis Gonzalez is due $9,647.00 (see the overtime spreadsheet attached as Exhibit G; see also ¶¶ 18-19 of the Declaration of Sokol, Ex. B, indicating how the amounts were determined).

The parties clearly disagree about the amount due to the Plaintiffs for unpaid overtime. Since fact issues exist as to the amount of damages, summary judgment should be denied.

## CONCLUSION

For all of the reasons set forth in this response, the Plaintiffs' motion for summary judgment should be denied. At a minimum, numerous questions of fact exist which should preclude the entry of summary judgment requiring that this matter be set for trial.

Dated: August 4, 2014

                                            Respectfully submitted,

                                            MOTEL LLC, an Illinois Limited Liability Company, d/b/a MOTEL BAR, and HERBERT GREENWALD, an individual,

                                                /s/ Robert J. Shelist
                                      By:_____

Robert J. Shelist
Law Offices of Robert J. Shelist, P.C.
500 N. Michigan Avenue--Suite 600
Chicago, Illinois 60611
(312) 226-0675
ARDC No. 6197541
rjsattorny@aol.com

---

[9] Defendants contend that no overtime payments are due to Reynoso at all as an exempt executive employee. Moreover, Reynoso, who worked in the kitchen as a full-time employee of Motel, also was retained separately to clean the bar and restaurant on a daily basis prior to the opening, and was paid $250 per week for that service. Reynoso, when doing his cleaning work, clocked into Motel's computer payroll system and was wrongfully receiving double payment for his cleaning work (Ex. A, ¶ 19; Ex. B, ¶ 17; Ex. C, pp. 37, 41, 43, 130; Ex. D, pp. 36, 38, 67).

# CERTIFICATE OF SERVICE

       I, Robert J. Shelist, certify that on August 4, 2014 I caused to be filed the foregoing document with the Clerk of the Court via the CM/ECF system. I further certify that I caused to be served a true and accurate copy of the foregoing documents upon counsel of record in this case, by electronic mail.

                                              Respectfully submitted,

                                              MOTEL LLC, an Illinois Limited Liability Company, d/b/a MOTEL BAR, and HERBERT GREENWALD, an individual,

                                                        /s/ Robert J. Shelist
                                      By:_____

Robert J. Shelist
Law Offices of Robert J. Shelist, P.C.
500 N. Michigan Avenue
Suite 600
Chicago, Illinois 60611
(312) 226-0675
ARDC No. 6197541