# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **JULIO REYNOSO**, **LUIZ GONZALEZ**, and **MANUEL GONZALEZ**, on behalf of themselves and all other plaintiffs similarly situated, known and unknown, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 13 C 5004 |
| **MOTEL LLC**, an Illinois Limited Liability Company, d/b/a **MOTEL BAR**, and **HERBERT GREENWALD**, an individual, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Julio Reynoso, Luis Gonzalez and Manuel Gonzalez have sued their employer Motel

LLC ("Motel") and its managing member, Herbert Greenwald ("Greenwald"), charging that

Motel and Greenwald violated the Fair Labor Standards Act ("FLSA," 29 U.S.C. §§ 201 et seq.[1])

and the Illinois Minimum Wage Law ("Wage Law," 820 ILCS 105/1 to 105/15) by failing to pay

them overtime. Plaintiffs now move for summary judgment on all counts under Fed. R. Civ. P.

("Rule") 56. Defendants admit Motel's liability but argue that Greenwald is not individually

liable, that liquidated damages should not be assessed under the FLSA because defendants acted

reasonably and in good faith, that any violations of the FLSA were not willful or in bad faith and

that plaintiffs' damages calculation is incorrect.

_____

[1] All further references to the FLSA will take the form "Section --," using the Title 29 numbering rather than the statute's internal numbering.

For the reasons stated below, plaintiffs' motion is granted as to Greenwald's liability and as to liquidated damages but denied as to defendants' purported willfulness. As for the calculation of damages, this Court finds that defendants have not raised any issue of fact as to the amount owed to Luis Gonzalez (apart from the willfulness question) or as to the amount owed to Manuel Gonzalez, but they have put the amount due to Reynoso in dispute. Accordingly plaintiffs' motion is granted in part and denied in part as to damages.

**Factual Background**

What follows is a summary of the undisputed (except where noted) facts.[2] Motel operates a bar and restaurant where Manuel and Luis Gonzalez work currently (P. St. ¶¶ 23, 33) and where Reynoso worked until July 9, 2013 (P. St. ¶ 48). All three regularly worked many more than 40 hours per week (P. St. ¶¶ 25, 28, 34, 49). Motel did not pay plaintiffs at the statutorily mandated overtime rate of 1-1/2 times the regular rate of pay for plaintiffs' work in excess of 40 hours per week[3] until plaintiffs filed this lawsuit in June 2013 (P. St. ¶¶ 30, 45, 61).

Greenwald is the managing member of Motel LLC and had ultimate authority over plaintiffs' work and wages throughout the relevant time period of June 30, 2010 through June 30, 2013 (Greenwald Dep. at 28:9-28:11, 32:19-36:17). Robert Van Bruggen ("Van Bruggen") was Motel's financial manager and bookkeeper during that time, and he shared with Greenwald the

_____

[2] LR 56.1 requires parties to submit evidentiary statements and responses to such statements to highlight which facts are disputed and which facts are agreed upon. This opinion identifies plaintiffs' and defendants' respective submissions as "P." and "D." followed by appropriate designations: LR 56.1 statements as "St. ¶ --," responsive statements as "Resp. St. ¶ --," and memoranda as "Mem.--," "Resp. Mem.--" and "Reply Mem.--."

[3] Both the FLSA and the Wage Law mandate that overtime payment (Section 207(a)(1) and 820 ILCS 105/4a(1)).

responsibility for paying Motel's employees (D. St. ¶ 13).[4]  Matt Sokol ("Sokol") was Motel's

general manager, with responsibility for overseeing non-kitchen staff and reporting all employee

work-hours to Van Bruggen (P. St. ¶ 9, D. St. ¶ 4).  Reynoso was the kitchen manager, although

the parties dispute the extent to which his duties were really managerial (P. Resp. St. ¶ 5).  Luis

and Manuel Gonzalez were kitchen workers (P. St. ¶ 10).

Greenwald and Sokol attested, and plaintiffs dispute, that Van Bruggen was solely

responsible for the decisions (1) not to pay plaintiffs overtime and (2) to pay them partially in

cash so as to avoid reporting their hours accurately to public authorities (D. St. Ex. A ¶¶ 12-13,

Ex. B ¶¶ 14-16).  Defendants assert that Van Bruggen's actions on that score were just one part

of a scheme, born out of personal hatred for Greenwald, under which Van Bruggen intentionally

mishandled Motel's finances -- either to drive down Motel's value so that he could purchase it or

to revenge himself on Greenwald for obscure reasons (D. Resp. Mem. 8-9).  Plaintiffs point to

sworn statements of their own that Greenwald, not Van Bruggen, instituted the part check, part

cash payment system (P. Resp. St. Ex. C ¶ 12, Van Bruggen Dep. at 18:15-19:6).

As for Reynoso, he was also responsible for cleaning in addition to his work cooking and

managing the kitchen (P.  St. ¶ 49).  He did that every day (all seven mornings each week) and

was paid a flat weekly fee of $250 in cash for cleaning, a payment that was over and above his

hourly pay for kitchen work (P. St. ¶ 60).  It is unclear how much time Reynoso spent in cleaning

each week:  He attested that he spent about 14 hours a week on that work (P. St. Ex. C ¶ 7),

---

[4]  Defendants' attempts to relieve Greenwald of liability on the theory that he delegated his authority over employee wages to Van Bruggen (e.g., D. Resp. St. ¶¶ 7-8) are unavailing, as will be seen.

while a fair reading of defendants' confused submissions is that that Motel's hodgepodge of wage records reflects the true amount of time that Reynoso spent in cleaning.[5]

## Legal Standard

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).  For that purpose courts consider the evidentiary record in the light most favorable to nonmovants (here the defendants) and draw all reasonable inferences in their favor (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)).  Courts "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts" in resolving motions for summary judgment (Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003)).  But a nonmovant must produce more than "a mere scintilla of evidence" to support the position that a genuine issue of material fact exists, and "must come forward with specific facts demonstrating that there is a genuine issue for trial" (Wheeler v. Lawson, 539 F.3d 629, 634 (7th Cir. 2008)).  Ultimately summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

---

[5] In response to plaintiffs' statement that Reynoso worked about 14.5 hours per week in cleaning, defendants aver that they "do not have information sufficient to either admit or deny" the statement (D. Resp. St. ¶ 58) -- a bastardized version of Rule 8(b)(5)'s pleading disclaimer that would be rejected as a Rule 56 submission even if it were framed properly.  Defendants have also agreed to plaintiffs' statement that Reynoso "averaged" 14 hours per week in his cleaning work (D. Resp. St. ¶ 49).  This Court might essay to treat those responses as totally sinking defendants' effort to dispute Reynoso's estimate of the hours that he spent in cleaning (Rule 56(e)(3)).  But defendants are saved by a footnote in their memorandum (D. Resp. Mem. 15 n.9) that refers to a separate attestation from Greenwald that Reynoso clocked in when he cleaned, so that Motel's time logs accurately record the hours Reynoso actually spent cleaning before his kitchen shift started at 9:30 a.m. (Greenwald Dep. at 40:22-41:6).

## Is Greenwald an Employer?

Plaintiffs and defendants first lock horns over Greenwald's status: Does he qualify as an "employer" under the FLSA -- so that he can be held personally liable to plaintiffs -- or not?[6] Certainly the FLSA's definition of "employer" is capacious: "any person acting directly or indirectly in the interest of an employer in relation to an employee" (Section 203(d)). That is an invitation for courts to consider the full spectrum of "economic realities" in determining whether a particular individual is an employer within the FLSA meaning (see Reyes v. Remington Hybrid Seed Co., 495 F.3d 403, 407-09 (7th Cir. 2007) for a thorough exploration of the so-called economic realities "test"). And the statute includes "an individual" in its definition of "person" (Section 203(a)).

Hence there is no question that an individual such as Greenwald can be liable for FLSA violations. Joint liability, in which more than one employer is liable for the same underpayment of wages, is also contemplated by the FLSA (see generally Section 791.2). Thus, as Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir. 1983) (citing numerous cases) said some 30 years ago:

> The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.

---

[6] As for the Wage Law, it uses essentially the same definition of "employer" as the FLSA (see 820 ILCS 105/3(c)). Because the Illinois Supreme Court appears never to have addressed the meaning of "employer" head-on, this opinion's analysis of the term within the meaning of the FLSA will hold for the Wage Law too. As Lewis v. Giordano's Enters., Inc., 397 Ill. App. 3d 581, 588, 921 N.E.2d 740, 746 (1st Dist. 2009) teaches in that respect:

> Therefore federal cases interpreting the FLSA, while not binding on this court, are persuasive authority and can provide guidance in interpreting issues under the Wage Law.

Given the plain meaning of the statutory texts and the economic realities at Motel, it is beyond dispute that Greenwald was plaintiffs' employer at all relevant times for the purposes of both statutes. By his own account he was either the "owner" or the managing member of Motel LLC at all times relevant to this litigation (Greenwald Dep. at 28:9-28:16).[7] He had final authority over the terms and conditions of plaintiffs' employment, including the amount and form of their wages (id. at 32:19-33:14, 36:13-36:17). He regularly worked at Motel, where he oversaw all day-to-day operations (id. at 30:2-30:15). He hired and supervised Van Bruggen, who was in charge of payroll and made out the paychecks to plaintiffs (id. at 36:1-36:6). In sum, there was no one with more authority over the terms and conditions of employment -- anyone's employment -- at Motel. Greenwald was the boss.

Greenwald argues to the contrary that he effectively delegated all of his control over plaintiffs to others and that he was "not an owner, shareholder, member, officer, or director of Motel" (D. Resp. Mem. 4). Greenwald submitted an affidavit in support of those assertions (D. St. Ex. A (Greenwald Decl.) at ¶ 4). But as plaintiffs correctly point out, that affidavit is directly contradicted by Greenwald's prior deposition testimony that he was the managing member of Motel LLC, possessed ultimate authority over all employment matters and personally supervised the work at Motel six days each week (see Greenwald Dep. at 28:9-28:11, 32:19-36:17). As Bank of Ill. v. Allied Signal Safety Restraint Sys., 75 F.3d 1162, 1168-69 (7th Cir. 1996), quoted with approval in Ineichen v. Ameritech, 410 F.3d 956, 963 (7th Cir. 2005), has put the well-known principle:

_____

[7] Although Greenwald transferred his ownership interest in the LLC to his father, that did not put an end to his status as managing member (P. Resp. St. Ex. A).

We have long followed the rule that parties cannot thwart the purposes of Rule 56 by creating "sham" issues of fact with affidavits that contradict their prior depositions.

That rule clearly applies here, where Greenwald points to nothing outside of his declaration that could create a genuine dispute of fact as to his role at Motel. In sum, Greenwald was plaintiffs' employer within the meaning of the FLSA and Wage Law for the relevant time period of this lawsuit.[8]

### Reynoso as a Covered Employee

Employees are generally covered by the FLSA unless they fit one of a handful of statutory exemptions. Defendants argue that Reynoso is not covered by the FLSA, and so he is not owed any overtime at all, because he fits the "executive" exemption found at Section 213(a)(1). That exemption comprises several elements, but as it happens only one is important here: the form and amount of payment, which is set out in an implementing regulation promulgated by the Secretary of Labor. That regulation reads in relevant part (29 C.F.R. §541.600(a)):

> To qualify as an exempt executive, administrative or professional employee under section 13(a)(1) of the Act, an employee must be compensated on a salary basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities.

As for the meaning of "salary basis," another regulation lays it out, again in relevant part (29 C.F.R. §541.602(a)):

---

[8] For the sake of completeness, this opinion notes that defendants also attack plaintiffs' Amended Complaint for containing what defendants call a conclusory allegation of Greenwald's status as employer (D. Resp. Mem. 3). Aside from its frivolousness in light of the earlier analysis, that argument is inappropriate in the context of a Rule 56 motion. Attacks on pleadings cannot, in the words of the Advisory Committee, "stand in the way of granting an otherwise justified summary judgment" (Rule 56 Advisory Comm. note (1963 Amendment)). Greenwald should have raised that argument, if at all, much earlier in this litigation under Rule 12.

> [A]n exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked.

To be exempt, then, Reynoso must have received at least $455 each week without regard to the number of hours he worked.

As plaintiffs correctly point out, Reynoso obviously does not meet that criterion. Although he was paid $250 per week in salary for his cleaning work, and although his hourly earnings exceeded $455 per week, he was never paid the minimum $455 per week in salary as required by the regulations. Defendants walked carefully through all the other requirements of the executive exemption, showing how they assertedly applied to Reynoso, but conspicuously failed to mention anything that might support a factual finding that Reynoso earned at least $455 per week in salary. That is because no such evidence exists. Reynoso is covered by the overtime provisions of the FLSA.[9]

### Defendants' Liability for Liquidated Damages under the FLSA

Plaintiffs demand liquidated damages, which the FLSA provides for in Section 216(b). Liquidated (i.e. double) damages are an ordinary rather than extraordinary remedy under the FLSA (see, e.g., Uphoff v. Elegant Bath, Ltd., 176 F.3d 399, 405 (7th Cir. 1999). They are not meant to punish the employer, but rather to make employees whole for wages not paid on time (29 C.F.R. §790.22 n.137).

Section 260 affords employers a defense to the imposition of double damages in limited circumstances. Defendants argue that defense applies. Here is the relevant text of Section 260:

---

[9] And he is also covered under the Wage Law, which expressly adopts the United States Secretary of Labor's regulations governing exemptions (820 ILCS 105/4a(2)(E)).

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act . . . the court may, in its sound discretion, award no liquidated damages.

Thus Section 260 requires a showing of both good faith and reasonable belief (Uphoff, 176 F.3d at 405), and the employer has the burden of demonstrating both (id.).

Defendants suggest that they come under the protection of Section 260 because they acted reasonably and in good faith by entrusting Van Bruggen with the task of paying plaintiffs. They say Van Bruggen and Van Bruggen alone chose not to pay plaintiffs overtime. Unfortunately for defendants, Shea v. Galaxie Lumber & Const. Co., 152 F.3d 729, 733 (7th Cir. 1998), quoting LeCompte v. Chrysler Credit Corp., 780 F.2d 1260, 1263 (5th Cir. 1986) , has explicitly foreclosed that type of defense:

> [A]n employer cannot satisfy its dual burden under § 260 solely by suggesting that lower-level employees are responsible for the violations.

Here, although Van Bruggen was a manager according to defendants, he was a "lower-level employee" as compared to both Motel and Greenwald.[10] They had responsibility for overseeing Van Bruggen and ultimate authority for ensuring that their employees were paid in accordance with the law. Defendants never did so, however. Greenwald stated he never

_____

[10] Our Court of Appeals appears not to have squarely addressed the situation before this Court, in which employers try to escape liquidated damages by blaming a manager entrusted with broad discretion (Shea involved an office secretary). But every other Court of Appeals to address the issue, in the context of either Section 260 or a purported third-party indemnification claim, has found that it would violate the policies of the FLSA to permit employers to shift the blame even to individuals with significant authority in the employer's corporate structure (see Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 144 (2d Cir. 1999), collecting cases in the indemnification context). Indeed, the very case from which Shea quoted its rule (LeCompte, 780 F.2d at 1262) involved a corporate defendant trying to shift responsibility, in the Section 260 context, onto supervisory employees. This Court finds those cases persuasive, and it therefore applies the rule in Shea to defendants' attempt to escape liquidated damages.

checked employee pay from the day he hired Van Bruggen as financial manager until the day he

was served with plaintiffs' complaint -- a period of about five years (Greenwald Dep. at

25:1-26:4, 35:22-37:18). Defendants simply cannot satisfy their burden under Section 260 by

pointing the finger at Van Bruggen, and both defendants are liable to plaintiffs for liquidated

damages.

### Were Defendants' Violations Willful?

Plaintiffs urge this Court to find that defendants acted willfully as a matter of law, and

defendants urge it not to. Employers who willfully violate the FLSA stretch their period of

liability back an extra year (they increase the typical two-year limitations period to three -- see

Section 255(a)). Because Reynoso and Luis Gonzalez are the only plaintiffs who were working

for defendants more than two years before filing this suit, the question is relevant only as to the

determination of damages owed them  (P. St. ¶¶ 23, 33, 48). It is also worth noting that the

Wage Law, although it does not provide for double damages, does have a three year statute of

limitations (820 ILCS 105/12(a)) -- so the issue of willfulness here questions only whether

defendants will be liable for the FLSA's double damages for work performed between June 30,

2010 and June 30, 2011, or for the Wage Law's single damages for that period.

Section 255(a)'s meaning of "willful" has a well-settled interpretation thanks to

McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988) (some internal punctuation

omitted):

> [T]hat the employer either knew or showed reckless disregard for the matter of
> whether its conduct was prohibited by the statute is surely a fair reading of the
> plain language of the Act.

Unlike Section 260, Section 255(a) imposes on the plaintiff the burden of showing willfulness, and a jury typically determines whether an employer acted willfully (see Bankston v. State of Ill., 60 F.3d 1249, 1253 (7th Cir. 1995)).

Plaintiffs have not presented sufficient evidence for this Court to find defendants acted willfully as a matter of law. But it is surely a close question, because even assuming a jury credited defendants' side of the story, Greenwald's admitted failure (lasting fully five years) ever to check whether his employees were being paid in accordance with the FLSA appears awfully close to recklessness as a matter of law. Still, defendants have produced evidence that they did not know "whether [their] conduct was prohibited by the statute" in that, at the time plaintiffs were being underpaid, defendants did not know what that "conduct" (carried out by Van Bruggen but also ascribed to them under the FLSA) even was. Thus there is a genuine dispute as to exactly how culpable defendants' ignorance of Van Bruggen's actions was. Accordingly plaintiffs' motion for summary judgment is denied as to whether defendants acted willfully, an issue that must be resolved by a factfinder.

### 2% Monthly Interest under the Wage Law

There is also a hefty added cost under the Wage Law: Wages left unpaid under it are subject to a 2% monthly interest charge (820 ILCS 105/12(a)). Defendants use their Response to Plaintiffs' Statement of Facts to suggest that the charge should not be assessed against them.[11] Because they did not act in bad faith, as defendants would have it, they should not be subject to "exemplary" damages under the Wage Law (e.g., D. Resp. St. ¶ 63). But the statutory language

---

[11] Using a response to a statement of facts to make legal arguments contravenes the purpose of Local Rule 56.1; which is to identify facts that are actually in dispute (see Bordelon v. Chicago Sch. Reform Bd. of Trustees, 233 F.3d 524, 528 (7th Cir. 2000)). This opinion addresses the issue for the sake of completeness.

denominating the 2% monthly charge as punitive damages was deleted in 2006 (contrast the West 2002 version of 820 ILCS 105/12(a) with the West 2006 version). Although no Illinois court appears to have addressed the question whether bad faith (or any other traditional prerequisite for such a charge) is still required for the 2% monthly interest charge to be applied, the plain sense of the statutory revision is that the charge is now automatic. It is axiomatic that when a legislature amends a statute, those amendments are presumed to be significant and not due to some "oversight or inadvertence on the part of the legislature" (McLaughlin v. People, 403 Ill. 493, 501, 87 N.E. 2d 637, 641 (1949)). Thus plaintiffs are entitled to add the 2% monthly statutory interest to the damages (that is, single damages) contemplated by the Wage Law.

## Calculating Damages

All that is left is the calculation of damages. Although a final calculation of damages owed to Reynoso and Luis Gonzalez will obviously require the resolution by a factfinder of the question of willfulness, there are other areas where there is no genuine dispute of material fact so that summary judgment for plaintiffs in those respects is called for.

Defendants' Proposed Damages Total

First off, plaintiffs and defendants submitted spreadsheets supporting competing totals of unpaid overtime wages currently owing. Plaintiffs laid out their method of calculating damages (P. St. ¶¶ 23-63, P. St. Ex. I), while defendants admitted that plaintiffs' method of calculation was proper as to Luis and Manuel Gonzalez (D. Resp. St. ¶¶ 23-47[12]) but disputed plaintiffs'

_____

[12] Defendants unhelpfully respond to Plaintiffs' Statement ¶¶ 32 and 47 by simply asserting that defendants acted in good faith. That is nonresponsive to plaintiffs' statements, and in any case defendants violate LR 56.1(b)(3)(B) by failing to cite specific facts in the record to

(continued)

calculation as to Reynoso (D. Resp. St. ¶¶ 48-63). Meanwhile, defendants' own proposed

calculation of damages is without any evidentiary foundation aside from a declaration by Sokol

that he assembled a spreadsheet based upon unidentified "books and records"[13] and he is

available to testify (Def. St. Ex. B ¶¶ 18-20).

Defendants are playing coy, and parties cannot play coy at the summary judgment stage.

As the rather bracing language in Springer v. Durflinger, 518 F.3d 479, 484 (7th Cir. 2008)

(internal punctuation omitted) has put it:

> [S]ummary judgment is the put up or shut up moment in a lawsuit, when a party
> must show what evidence it has that would convince a trier of fact to accept its
> version of the events.

Here defendants have totally failed to come forward with evidence undergirding their proposed

damages amounts.

More shocking, an examination of the spreadsheet submitted by defendants (D. St. Ex. G)

reveals that they arrived at their lower damages calculation by actually omitting certain pay

periods, apparently at random.[14] Defendants' aim appears to be, not to arrive at an accurate

valuation of unpaid overtime, but simply to arrive at a lower valuation.

_____

(footnote continued)
support that (or any other) assertion. This Court therefore exercises its discretion to treat
defendants' nonresponses at D. Resp. St. ¶¶ 32 and 47 as admissions that plaintiffs properly
calculated interest as provided for in the Wage Law, based upon the unpaid overtime totals that
plaintiffs otherwise set forth.

[13] In light of defendants' failure to say otherwise, it must be assumed that such records
are the same records plaintiffs used, given that defendants agreed with plaintiffs' reliance on
certain wage records in establishing how many hours Luis and Manuel Gonzalez worked (see
Def. Resp. St. ¶¶ 23-47).

[14] For example, they omit overtime hours worked for the pay period ended December 30,
2012 in their calculation of all three plaintiffs' tallies of back wages and do not count any

(continued)

In effect, defendants' spreadsheet and proposed damages totals are nothing better than an attempted bargaining position. That is not enough for Rule 56, and especially not for Rule 56(c)(4), which requires that affidavits such as Sokol's be made on personal knowledge and be capable of admission into evidence. Bargaining positions do not meet those requirements. Therefore defendants' spreadsheet and the proposed damages totals derived from it therefore fail to raise any issue of fact and will be ignored.

**Damages for Individual Plaintiffs**

With defendants' proposed damages totals thus out of the way entirely, this opinion now examines whether there is anything to preclude the grant of summary judgment to the individual plaintiffs as to the amount of damages. On that score it will be seen that defendants have raised sufficient evidence to create a factual dispute as to the proper calculation of unpaid overtime due Reynoso. As for Luis Gonzalez, this opinion's earlier determination that there is a dispute of fact as to willfulness means that the total amount of damages due him cannot be determined on summary judgment, although there is no dispute of material fact as to all other aspects of the damages due him. Lastly, as to Manuel Gonzalez, defendants have raised no dispute of material fact relevant to the determination of damages due him, and he is entitled to summary judgment.

To return to Reynoso's situation, defendants effectively contest the amount of overtime due him in two ways. First they say that Reynoso often clocked in to do his morning cleaning work, so that Motel's few surviving time logs already include the hours Reynoso spent in cleaning (Greenwald Dep. at 40:22-41:6). Although Reynoso made a sworn declaration that he

---

(footnote continued)
overtime hours worked by Luis Gonzalez before June 30, 2012. Nor does the Sokol declaration even attempt to explain those aberrations.

did not clock in while doing cleaning work (P. Resp. St. Ex. C ¶ 12), the time logs from Motel

that show clock-in and clock-out times often reflect a Reynoso clock-in about two hours before

what Greenwald said was his scheduled start time of 9:30 a.m. (P. St. Ex. H).  That is enough to

support an inference that Reynoso was clocking in early to clean.  Second, defendants also aver

that Reynoso often had someone else do his cleaning work for him -- Greenwald stated in his

deposition that he personally saw someone cleaning for Reynoso "plenty of times" (Greenwald

Dep. at 42:15-42:20).  Obviously Reynoso would not be entitled to overtime for work that he did

not perform personally.  So there is also a dispute as to how often, if at all, Reynoso assigned his

cleaning work to others.  With two live disputes about the number of hours Reynoso actually

worked, it is clearly impossible to enter summary judgment for him as to a specific amount of

damages.

So much for Reynoso's damages claim, but the story is different for Luis and Manuel

Gonzalez.  As to both of them plaintiffs present a thorough description of the evidence

underpinning their calculations of unpaid overtime (P. St. Ex. I ¶¶ 4-6, 10-13) and of the method

of calculating the Wage Law's interest charge (P. St. Ex. I ¶¶ 23-24).  As already stated,

defendants disputed none of that evidence and explicitly agreed with plaintiffs as to the method

of calculating damages -- and once one admits both the underlying numbers and the method of

calculation, precise damages become a matter of simple (albeit ineluctable) arithmetic.[15]

_____

[15]  This Court's own review of the submissions of both parties also failed to turn up
anything that could cast doubt on plaintiffs' calculations.

Accordingly, as set forth by plaintiffs, this Court enters summary judgment for Manuel Gonzalez in the amount of $12,248.55.[16]  As for Luis Gonzalez, there is no dispute that he is entitled to $23,266.78 in unpaid overtime and to $12,649.42 in interest under the Wage Law (P. St. Ex. I ¶¶ 14-15).  Though he is also entitled to liquidated damages, it is unclear exactly how much -- that depends, it will be recalled, on a factfinder's determination as to willfulness.  If no willfulness is found, Luis Gonzalez will be entitled to liquidated damages only for work performed from June 30, 2011 to the date of filing two years later (still a substantial sum).  But if one or both defendants did act willfully, he will be entitled to recover fully $23,266.78 as additional liquidated damages.

## Conclusion

For the foregoing reasons, plaintiffs' motion for summary judgment is granted as to (1) Greenwald's personal liability, (2) both defendants' liability for liquidated damages, (3) both defendants' liability for the Wage Law's 2% monthly interest, and (4) Reynoso's coverage under the FLSA and Wage Law.  Plaintiffs' motion is denied as to defendants' willfulness as to plaintiffs Luis Gonzalez and Julio Reynoso and as to the damages payable to Julio Reynoso (as a matter of law, that is -- the ultimate ruling on both those subjects will hinge on factual determinations).

As for greater particularization:

(a)     Final judgment is ordered to be entered in favor of Manuel Gonzalez and

        against both defendants jointly and severally in the sum of $12,248.55, for

---

[16]  That figure comprises $5,260 in unpaid overtime dating back to July 1, 2012 (his first paycheck), $5,260 in liquidated damages under the FLSA and a $1,728.55 interest charge under the Wage Law (P. St. Ex. I ¶¶ 7-8).

which purpose this Court expressly determines that there is no just reason

for delay (see Rule 54(b) and <u>Nat'l Metalcrafters v. McNeil</u>, 784 F.2d 817,

821 (7th Cir. 1986)),

(b)     Judgment (but not a final determination under Rule 54(b), given the

unresolved issue of defendants' willfulness) is ordered to be entered in

favor of Luis Gonzalez and against both defendants jointly and severally

in the sum of $35,916.20.

All parties are ordered to appear for a status conference at 9:15 a.m. on October 28, 2014 to

discuss the timing and procedures for moving the case forward as to the issues that remain

unresolved.

_____
Milton I. Shadur
Senior United States District Judge

Date:  October 21, 2014